Joshua Sabert Lowther, Esq.
Ga. Bar # 460398
Admitted *Pro Hac Vice*
Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
404.406.4052
jlowther@lowtherwalker.com
www.lowtherwalker.com

Randi L. Johnson
Wash. Bar # 44618
Gravis Law, PLLC
1309 W Dean Ave., Ste. 100
Spokane, WA 99201
509.624.1610
rjohnson@gravislaw.com
www.gravislaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:23-CR-00135-MKD-1 |
| Plaintiff, | **DEFENDANT THOMAS ANDREW WEBSTER'S SENTENCING MEMORANDUM** |
| v. | |
| THOMAS ANDREW WEBSTER, | |
| Defendant. | |

Dr. THOMAS ANDREW WEBSTER, pursuant to Fed. R. Crim. P. 32, respectfully submits the following position regarding sentencing.

**I. Offense Level and Criminal History**

Dr. Webster plead guilty to one count of conspiracy to violate the anti-kickback statute (42 U.S.C. § 1320a-7b(b)) in violation of 18 U.S.C. § 371. PSR, ¶ 3. This offense is punishable a statutory maximum penalty of five years of imprisonment. 18 U.S.C. § 371.

Dr. Webster concurs with the probation officer's assertion that his sentencing-guidelines range is 57-60 months of

imprisonment, based on the following calculation:

| | |
|---|---|
| Base Offense Level: | 8 |
| Specific Offense Characteristic (Loss) | +20 |
| Adjustment for Role in Offense (Trust) | +2 |
| Adjusted Offense Level: | 30 |
| Chapter Four Adjustment (Zero-Point Offender) | -2 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 25 |
| Criminal History Score | 0 (CHG I) |
| Statutory Maximum Penalty | 5 years |
| Guidelines Range | 57-60 Months |

(PSR, ¶¶ 32-41)

**II. Departures**

Dr. Webster submits that there are no applicable departures from the sentencing-guidelines range.

**III. 18 U.S.C. § 3553(a)**

a. **Nature and Circumstance of the Offense and History and Characteristics of the Defendant**

1. **Nature and Circumstances of the Offense**

Dr. Webster takes full responsibility for his illegal conduct. However, there were extenuating circumstances in Dr. Webster's life that contributed to his participation in the offense.

The primary catalyst for the offense conduct was Dr. Webster's contentious divorce. PSR, ¶ 28. His now-former wife filed a restraining order preventing him from seeing his children for three years. Id. A ordered him to finance his wife and children with monthly payments of $12,500 through the duration of the divorce proceedings. *Id*. Dr. Webster, in an effort to meet this financial obligation, sought supplemental employment online, and accepted employment with Company A. *Id*. Dr. Webster was under immense pressure to continue his employment with Company A to make these monthly payments so Dr.

Webster could preserve the hope of seeing his children again. *Id.*

Medicare investigators notified Dr. Webster in January 2022 that he was involved in a fraud. Dr. Webster readily provided information to those investigators, and discussed the matter with Company A. PSR, ¶ 22. Nonetheless, Company A assured Dr. Webster that its operation was legal. *Id.* When Dr. Webster received telephone and email complaints about fraudulent activity, he continued to confront Company A with his concerns (going as far as submitting on "online complaint" to the Centers for Medicare and Medicaid Services). PSR, ¶ 23. Company A's attorneys continued to assure Dr. Webster that Company A's operations were legal. *Id.* Dr. Webster, desperately needing to stay employed, and more worried about his children than addressing the fraud concern, simply continued working for Company A. *Id.*

Dr. Webster's person circumstances do not excuse his conduct; however, it is crucial to consider his mindset at the time of that conduct. From Dr. Webster's perspective, the hope of seeing his children was contingent on his making support payments, which heavily influenced his decision to stay employed with Company A. He should have left Company A when he suspected that it—through him and other providers—was committing health care fraud. Nonetheless, Dr. Webster, as a result of his dedication his children, and the exhaustion and lack of motivation to confront another difficult situation caused by his depression, chose to ignore the fraud and continue working for Company A.

//

## 2. History and Characteristics of Dr. Webster

Dr. Webster is first and foremost a dedicated father to three children; Sophia, William, and Anna. PSR, ¶ 62.

Dr. Webster has daily contact with Anna and Sophia, and lives with William. PSR, ¶ 63. Dr. Webster's children are his greatest pride, and he attests to their resilience, intelligence, and accomplishments. *Id.*

Dr. Webster's divorce was a horrible experience for both him and his children. PSR, ¶ 62. His eldest child, Anna, suffered emotionally and physically, and William suffered behavioral and academic challenges. *Id.* A restraining order prohibited Dr. Webster from being with his children during this dark time in their lives. *Id.* Later, Dr. Webster learned that his ex-wife had never explained the divorce to any of their children, causing them even more distress. *Id.* Both Anna and Sophia still receive mental health counseling to process these events. *Id.*

Dr. Webster and his children, despite these hardships, have a fantastic relationship. PSR, ¶ 63. Notably, Dr. Webster's children are all capable, autonomous adults who have chosen to stay in his life, which is a testimony to his role as an excellent father. *Id.* Neither Dr. Webster nor his children have any contact with his ex-wife. *Id.* Dr. Webster is the only parental figure in their lives now, and they all share close bonds. *Id.*

//
//
//
//

### b. Need to Afford Adequate Deterrence to Criminal Conduct

#### 1. Specific Deterrence

Extensive criminological research has shown strong family support to be a predictor of desistance from crime for defendants upon release, alongside stable work, transformation of identity, and aging. *See* Thomas J. Mowen, *et al.*, Family Matters: Moving Beyond "If" Family Support Matters to "Why" Family Support Matters during Reentry from Prison, 56(4) J. of Rsch. in Crime and Delinq. 483; *see* also John H. Laub & Robert J. Sampson, Understanding Desistance from Crime, 28 Crime and Justice, 1 (2001).

Based on the available research, Dr. Webster fits the demographic for someone who will not re-offend, as he has strong family ties, post-sentencing employment, and is approaching older age. Mowen, *Id.*

As demonstrated above, Dr. Webster feels a strong responsibility and dedication to his children. PSR, ¶ 62. Additionally, Dr. Webster is optimistic that he can continue working at his current place of employment after the resolution of this case; he can continue to contribute positively to society and provide for himself and his family. These variables point to future desistance from crime.

Finally, Dr. Webster is fifty-three years old and has a criminal history score of zero. PSR, ¶ 47. Age and criminal history, together, are strong predictors of recidivism. In a United States Sentencing Commission study, people who were between fifty and fifty-nine at the time of release who had a criminal history score of one had recidivism rates of only

Def.'s Sent'g Mem.                                                                 5

fifteen percent. *See* Ryan Cotter, *et al.* Recidivism of Federal Offenders Released in 2010. U.S. Sent'g Comm'n (2021) at 30. Therefore, Dr. Webster is in a demographic with extremely low rates of recidivism. Also, of all federal offenders released in 2010, only four percent were re-arrested with fraud charges. *See* Ryan Cotter, *et al.* Recidivism Of Federal Offenders Released In 2010. U.S. Sent'g Comm'n (2021) at 23. Statistically speaking, Dr. Webster is unlikely to commit another crime. A non-custodial sentence, or a term of imprisonment substantially below the sentencing-guidelines range, will suffice for specific deterrence.

      **2.**    **General Deterrence**

Empirically, criminologists have shown that harsher sentences do not deter the public from committing crimes; rather, the certainty of getting caught has a greater general deterrent effect. The fact that Dr. Webster was arrested and plead guilty will be the most deterrent factor of this case to prospective criminals—not the length or severity of his sentence. *See* Charles E. Loeffler & Daniel S. Nagin, The Impact of Incarceration on Recidivism, 5 Ann. Rev. of Crim. 133–152 (2022). A non-custodial sentence, or a term of imprisonment substantially below the sentencing-guidelines range, will be sufficient to generally deter others for the purposes of 18 U.S.C. § 3553(a).

      **c.**    **Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

A non-custodial sentence, or a term of imprisonment substantially below the sentencing-guidelines range, will be

sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for Dr. Webster. Dr. Webster is a non-violent offender with zero criminal history. PSR, ¶ 47. He was conscientious to never order anything other than durable medical equipment ("DME") (such as medications or genetic testing) that could put patients in physical or emotional danger, citing that he would need more information and an in-person visit to request those things. PSR, ¶ 19. Dr. Webster felt, based on the information he was provided with, that these patients needed DME. *Id.* Further, Dr. Webster has agreed to financially remedy the harm he caused to the Medicare and TRICARE programs. PSR, ¶ 4. He will be a convicted felon with all accompanying loss of rights; his employment opportunities will be limited; and he likely will lose his medical licenses. Finally, Dr. Webster has plead guilty to crimes which will irreparably damage his societal standing and reputation as a veteran and accomplished medical professional. These consequences alone are sufficient to reflect the seriousness and provide just punishment for Dr. Webster's behavior; a custodial sentence is unnecessary.

      **d.    Need to Protect the Public From Future Crimes of Dr. Webster**

As stated above, Dr. Webster is in a demographic that is statistically unlikely to re-offend. He also has opportunities for post-sentencing employment and close relationships with family—factors that predict resistance from future criminality.

In addition, Dr. Webster's crimes were serious, but non-violent. A custodial sentence is not necessary to protect the public.

//

  e. **Substance Abuse Mental Health Treatment or Vocational Training**

  Dr. Webster suffers from depression, for which he takes medication. Continuing treatment for this condition will be crucial to Dr. Webster's progress towards becoming a law-abiding citizen whether he is given a custodial or non-custodial sentence. Therefore he requests that this Court recommend mental health treatment, regardless of the sentence imposed.

  f. **Need to Avoid Unwarranted Sentencing Disparities**

  According to the U.S. Sentencing Commission's Judiciary Sentencing Information database, there were an insufficient number of defendants (only one) in the last five fiscal years to provide the average sentences for defendants matching Dr. Webster's criminal history and offense level. *See* U.S. Sentencing Commission, Judiciary Sentencing INformation, https://jsin.ussc.gov. Sentencing Dr. Webster to a non-custodial sentence, or a term of imprisonment substantially below the sentencing-guideline range, would not cause sentencing disparities.

  g. **Need for Restitution and Victim Compensation**

  Dr. Webster, pursuant to the Plea Agreement, will pay $839,566.4 in restitution (PSR, ¶ 4.); of course, a non-custodial sentence, or a term of imprisonment substantially below the sentencing-guideline range, will facilitate his payment of restitution.

**IV. Voluntary Surrender and Designation**

  If this Court determines that a custodial sentence is

Def.'s Sent'g Mem. 8

appropriate, Dr. Webster submits that he meets the criteria in 18 U.S.C. § 3143(a) for release pending execution of sentence, and requests that this Court allow him to remain on release pending his voluntary surrender to a federal prison.

Furthermore, Dr. Webster would request that this Court recommend that he be designated to serve any term of imprisonment at Federal Prison Camp Morgantown in West Virginia, the closest facility of its security classification to his residence in Sylvania, Ohio.

## V. Conclusion

Dr. Webster, based on the foregoing argument, prays that this Court sentence him to a non-custodial sentence, or alternatively, to term of imprisonment substantially below his sentencing-guidelines range.

Date:    July 23, 2024

Respectfully submitted,

*s/Joshua Sabert Lowther*
Joshua Sabert Lowther, Esq.

### Certificate of Service

I hereby certify that on July 23, 2024, I electronically filed DEFENDANT THOMAS ANDREW WEBSTER'S SENTENCING MEMORANDUM with the Clerk of the United States District Court for the Eastern District of Washington by way of the CM/ECF system, which automatically will serve this document on the attorneys of record for the parties in this case by electronic mail.

Date:    July 23, 2024

Respectfully submitted,

*s/Joshua Sabert Lowther*
Joshua Sabert Lowther, Esq.